IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**STEPHEN M. GARRISON,**

    Plaintiff,

    v.

**OHIO DEPARTMENT OF
REHABILITATION & CORRECTIONS,
et al.,**

    Defendants.

CASE NO. 24 CV 1614

JUDGE JAMES R. KNEPP II

MEMORANDUM OPINION AND ORDER

### INTRODUCTION

*Pro se* Plaintiff Stephen M. Garrison brings this 42 U.S.C. § 1983 action against Defendants Ohio Department of Rehabilitation & Corrections ("ODRC"), Corrections Officer Case Hoffman, Lieutenant Douglas Yingling, Certified Nurse Practitioner Jodie Slone, and Officer Caleb Rose. *See* Docs. 1, 4, 15.[1] Plaintiff filed his original complaint on September 20, 2024 (Doc. 1), followed by two supplements that expanded upon the facts alleged (Docs. 4, 15).[2] He brings claims of excessive force, deliberate indifference to medical needs, and retaliation. *See* Docs. 1, 4, 15. All Defendants moved to dismiss for lack of subject matter jurisdiction. (Doc. 21, at 7-11; Doc.

---

1. Plaintiff originally identified the individual Defendants by their last names and titles (*see* Doc. 1); Defendants identified their full names in their respective motions to dismiss (Docs. 21, 28). In his second supplement, Plaintiff identified as Defendants: (1) ODRC; (2) Hoffman, (3) Yingling, (4) Slone, and (5) "[a]dditional C.O. name unknown who acted with unjust force & malice prior to Hoffman's arrival." (Doc. 15, at 2). Shortly thereafter, Plaintiff filed a proposed summons for Rose, who he indicated was "previously John Doe." (Doc. 20). The Court construed these filings as a motion to substitute/add Rose as the previously-unidentified correctional officer Defendant and granted that motion. (Doc. 25).
2. The Court previously granted Plaintiff's Motion to Amend his Complaint to include the allegations in these additional supplements. (Doc. 25, at 2).

28, at 7-11).[3] In the alternative, Defendants move to dismiss several claims for failure to state a claim upon which relief can be granted. (Docs. 21, 28). Plaintiff filed an opposition (Doc. 30), and Defendants replied (Doc. 31).[4] Jurisdiction is proper under 28 U.S.C. § 1331.

For the reasons set forth below, the Court DENIES Defendants' Motions to Dismiss for lack of subject matter jurisdiction but GRANTS the Motions to Dismiss for failure to state a claim as to the retaliation claim against all Defendants, the excessive force claim against Rose, and all claims against ODRC. This case will proceed on Plaintiff's excessive force claims against Hoffman and Yingling and deliberate indifference claim against Slone.

## BACKGROUND

Factual Allegations

The facts presented in the Amended Complaint are accepted as true for the purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those facts are as follows.

Plaintiff alleges that on October 31, 2023, while incarcerated at Marion Correctional Institution, he had a "very bad reaction" to a drug, which caused him to become "erratic" and to "[f]lail[] [his] arms [and] legs [and] yell[] incoherently." (Doc. 15, at 4). Hoffman arrived and "immediately jumped on" Plaintiff, "pushing his knee into [Plaintiff's] back" and "trying to force

---

3. Defendants ODRC, Hoffman, Yingling, and Slone filed a joint Motion to Dismiss on March 28, 2025. (Doc. 21). Following later service, Rose filed a separate Motion to Dismiss on April 29, 2025. (Doc. 28). All Defendants are represented by the same counsel, and the Motions make several identical arguments. The Court therefore addresses the Motions together.

4. Plaintiff subsequently filed a "Response to Defendants['] Reply." (Doc. 32). The Court's rules allow for a motion, opposition, and reply. *See* Loc. Civ. R. 7.1. No additional briefing is authorized under this Court's Local Rules. "[C]ourts agree that neither local rules . . . nor the Federal Rules of Civil Procedure authorize a non-moving party to file a sur-reply, and that to file a sur-reply the party must obtain leave of the court." *Eberhard v. Chicago Title Ins. Co.*, 2014 WL 12756822, at *2 (N.D. Ohio) (collecting cases). Because Plaintiff did not seek leave of Court, his additional filing is not properly before the Court.

[his] arms out from under [him]." *Id.* Plaintiff asserts a correctional officer to his left (later identified as Rose) "got [his] left arm out" and Hoffman was on top of him. *Id.* Hoffman and Correctional Officer Jones (who is not a Defendant in the current action) pulled his right arm out from under him; Hoffman "torqued" that arm, "forcing [Plaintiff's] right hand up so far between [his] shoulder blades" that his right elbow "snapped." *Id.* Plaintiff is unsure which officer shackled him, or which "repeatedly kneed [his] left leg, causing a bruise to cover [his] entire thigh." *Id.* Plaintiff asserts "[t]hey then dragged" him down two flights of stairs while his arm was in extreme pain. *Id.* Defendant Yingling and Correctional Officer Pack (who is not a Defendant in the current action) then escorted him down a hallway, with Pack on the left and Yingling on the right. *Id.* It was difficult for Plaintiff to walk because his feet had been "stomped on" and his thigh hurt "from being kneed repeatedly." *Id.* The officers "dragged him down the hallway," and Yingling "put[] more torque and pressure" on Plaintiff's right arm "with complete disregard" for Plaintiff's claims of pain. *Id.* When Plaintiff arrived at the medical unit he was "screaming in pain." *Id.* Yingling caused Plaintiff additional pain in the process of removing his cuffs and shackles. *Id.* at 5.

Plaintiff contends he did not receive proper treatment for his broken elbow at his initial encounter with the ODRC medical unit. *Id.* at 5-7. He asserts the nurses did not take him seriously or give him anything for the pain, but he was ultimately provided ibuprofen twice that day and received an x-ray the following day. *Id.* at 6. Two days after Plaintiff's initial encounter with the medical unit, Slone told him he had a fractured elbow and he was given a splint, ace bandages, and a sling, but insufficient pain medication. *Id.* He asserts his elbow "should have been properly cast" and the injury worsened due to the delayed treatment, resulting in the need for surgery. *Id.* From the time of his injury through December 20, 2023, Plaintiff was given ibuprofen and Tylenol three times per day and received four x-rays, each of which made it "obvious the facture was separating

3

more and more; getting worse." *Id.* Plaintiff asserts Slone told him she was "unable to do anything" and he "just had to deal with it." *Id.* By December 20, the fracture had separated an inch and Slone referred him for surgery, which occurred on December 27, 2023. *Id*. The surgery involved a plate and eight screws. *Id.* Plaintiff now has a "deformed" elbow and a twelve-inch scar. *Id.* Plaintiff further asserts he has PTSD, lasting pain, and exacerbation of preexisting issues in his right shoulder, neck, and back. *Id.* at 7.

Plaintiff additionally claims he was subject to retaliation. *Id.* at 7-10. Plaintiff identifies multiple incidents he classifies as retaliation, including: ORDC staff did not properly care for his personal property; he was subjected to harassment; he experienced difficulty when trying to access public records from ODRC staff; he had problems with the mail room; and his requests to speak with police departments and other agencies regarding his claims of excessive force were denied. *Id.*

Plaintiff brings claims under 42 U.S.C. § 1983 for excessive force and deliberate indifference to medical needs under the Eighth Amendment and retaliation under the First Amendment. *See* Docs. 1, 4, 15.

Procedural Background

As noted above, Plaintiff filed his original Complaint in this case on September 20, 2024. (Doc. 1).

On November 21, 2024, Plaintiff filed an analogous *pro se* complaint in the Ohio Court of Claims where he listed ODRC, Marion Correctional, Yingling, Hoffman, and Slone as defendants. (Doc. 21-1, at 1). Plaintiff used a standardized "claim form" to provide facts involving his allegations of excessive force on October 31, 2023, lack of adequate treatment for his alleged injury, and retaliation. *Id.* at 2. Plaintiff's claim form contains details about his claimed damages,

4

which include his broken elbow, the surgery for his elbow, and the worsening of preexisting conditions in his right shoulder, lower back, and neck. *Id.* On January 24, 2025, Plaintiff filed a subsequent amended complaint in the Court of Claims. (Doc. 21-5). This amended complaint is largely identical to the second supplement filed in the instant case. *Compare* Doc. 15, *with* Doc. 21-5. The Ohio Court of Claims has stayed its action. *See* Doc. 21-4.

## STANDARD OF REVIEW

"The district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation marks and citation omitted). Dismissal under Fed. R. Civ. P. 12(b)(1) is required where a court does not possess the necessary subject matter jurisdiction to hear a claim. There are two categories of challenges to subject matter jurisdiction: facial attacks and factual attacks. *Carr v. Arrowhead MHC, LLC*, 518 F. Supp. 3d 1018, 1021 (N.D. Ohio 2021). A facial attack challenges the sufficiency of the pleadings, while a factual attack challenges "the factual existence of subject matter jurisdiction." *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). For a factual attack, the court does not presume the Plaintiff's assertions are true; instead, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *McCausland v. Charter Twp. of Canton*, 2024 WL 3045525, at *3 (6th Cir.) (citation modified).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Although a complaint need not contain "detailed factual allegations," it must contain more than just "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, to survive a 12(b)(6) motion, a complaint must

5

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

*Pro se* pleadings are held to less stringent standard than pleadings written and drafted by lawyers. *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008). However, the "lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The liberal construction accorded to *pro se* litigants does not "abrogate basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court is not required to "conjure up unpleaded facts" or create claims for *pro se* plaintiffs. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation modified); *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). Instead, a *pro se* plaintiff's pleadings must offer fair notice to the defendants of what plaintiff's claims are and the grounds they are asserted under. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). The complaint still must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011) (quoting *Iqbal*, 556 at 678).

## DISCUSSION

Defendants present two arguments for dismissal. First, they move to dismiss for lack of subject matter jurisdiction, asserting Plaintiff waived his claims in this case by filing a claim in the Ohio Court of Claims based on the same facts. *See* Doc. 21, at 7-11; Doc. 28, at 7-11. Alternatively, Defendants move to dismiss Plaintiff's retaliation claims, his excessive force claim against Rose, and his claims against ODRC for failure to state a claim upon which relief can be granted. *See* Doc. 21, at 11-13; Doc. 28, at 11-15. As set forth below, the Court finds Plaintiff did not

knowingly, intelligently, and voluntarily waive his claims, but agrees Defendants are entitled to dismissal of the retaliation claims, Rose is entitled to dismissal of the excessive force claim, and that ODRC is immune from suit.

Motion to Dismiss for Lack of Subject Matter Jurisdiction / *Leaman* Doctrine

Defendants first move to dismiss based on Plaintiff's filing of an analogous claim in the Ohio Court of Claims. They contend Plaintiff knowingly waived his right to file this federal suit when he filed his claim in the Ohio Court of Claims. In response, Plaintiff argues he was not aware that filing a claim in the Ohio Court of Claims waived his right to file a suit in federal court and contends there is no valid waiver. *See* Doc. 30, at 3.

Pursuant to Ohio Revised Code § 2743.02(A)(1), "filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee." The Sixth Circuit has held this statute creates a "*quid pro quo* in which the state agreed to forego its sovereign immunity in exchange for the plaintiff's waiver of claims against the state's employees." *Turker v. Ohio Dept. of Rehab & Corr.*, 157 F.3d 453, 457 (6th Cir. 1998) (citing *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 954 (6th Cir. 1987) (en banc)). And the Sixth Circuit has "consistently applied *Leaman* to bar plaintiffs from bringing suit in federal court against a state employee after bringing suit against the state in the Court of Claims based on the same claim." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 463 (6th Cir. 2008) (collecting cases).

Nevertheless, for § 2743.02(A)(1) to preclude a plaintiff's right to sue, the Sixth Circuit has explained the waiver must be "knowing, intelligent, and voluntary." *Leaman*, 157 F.3d at 457. "Where a plaintiff was represented by competent counsel before the Ohio Court of Claims, a waiver can be presumed to be knowing, intelligent, and voluntary." *Harris v. Sowers*, 2024 WL

7

3051285, at *5 (6th Cir.) (first citing *Leaman*, 825 F.2d at 956-57, and then citing *Kajfasz v. Haviland*, 55 F. App'x 719, 721 (6th Cir. 2003)). There is no such presumption where, as here, a plaintiff is proceeding *pro se*. *Id.* Instead, "the district court must make a 'factual finding as to whether [the plaintiff] knowingly, intelligently, and voluntarily waived his right to proceed in federal court.'" *Id.* (quoting *Kajfasz*, 55 App'x at 722).

"To determine whether Plaintiff knowingly, intelligently, and voluntarily waived his claims, the Court may consider a '*pro se* plaintiff's prior litigation experience, the coherency of his filings in both the federal and Court of Claims matters, and whether the litigant referenced the statutory waiver provision in the filings.'" *Smith v. Chambers-Smith*, 2024 WL 5075378, at *5 (N.D. Ohio) (quoting *Troche v. Crabtree*, 2014 WL 2211012, at *3 (S.D. Ohio)). A waiver "may be deemed valid if the defendant establishes that the 'plaintiff was familiar with the Court of Claims Act.'" *Harris*, 2024 WL 3051285, at *5 (quoting *Russell v. Heineman*, 992 F.2d 1217 (6th Cir. 1993) (table)). If a *pro se* litigant directly refers to the waiver provision in § 2743.01(A)(1), it is more likely a knowing waiver will be found. *Id.* But "a defendant's failure to offer 'convincing evidence' that a plaintiff was 'familiar with the waiver provision of the Ohio Court of Claims Act' undermines a defendant's argument for waiver under the *Leaman* doctrine." *Smith*, 2024 WL 5075378, at *6 (quoting *Harris*, 2024 WL 3051285, at *6).

With these principles in mind, the Court turns to Defendants' argument and the relevant factors.

*Plaintiff's Prior Litigation Experience / Coherency of Filings*

Defendants cite Plaintiff's prior litigation experience (two Southern District of Ohio *habeas corpus* petitions and an appeal to the Sixth Circuit) and his filings in the present case to argue Plaintiff is an experienced litigator. *See* Doc. 21, at 9-10; Doc. 28, at 9-10. Defendants further

8

suggest Plaintiff's filings in the present case and the Ohio Court of Claims case are coherent and "demonstrate experience and intelligence in the law." (Doc. 21, at 9); (Doc. 28, at 9). In opposition, Plaintiff maintains he is "learn[ing] as [he] goes" and has no prior knowledge of the *Leaman* doctrine or the statutory waiver provision. (Doc. 30, at 3).

Although Plaintiff's filings demonstrate a basic understanding of the procedural nature of his cases, they do not demonstrate a substantive understanding of the Ohio Court of Claims waiver provision. *Smith*, 2024 WL 5075378, at *6 ("Defendants do not offer convincing evidence that Plaintiff was familiar with the waiver provision."). Plaintiff's initial listing of Defendants Yingling, Hoffman, and Slone in his initial Court of Claims complaint suggests he lacked knowledge of the Ohio Court of Claims Act at the time of filing because "[t]he only defendant in original actions in the court of claims is the state." Ohio Rev. Code § 2743.02(E). *See* Doc. 21-1, at 1. Moreover, Plaintiff's initial Complaint here as well as his Court of Claim complaint, were filed on template complaint forms which prompted the required information. *See* Docs. 1, 21-1. The prompted nature of these filings does not constitute "convincing evidence" that Plaintiff has expertise in the law. *See Smith*, 2024 WL 5075376, at *5 (explaining that setting forth claims on a standardized form does not demonstrate greater sophistication than a typical *pro se* plaintiff).

*Plaintiff's Reference to Statutory Waiver in the Filings*

In their reply brief, Defendants assert Plaintiff has knowledge and understanding of the Court of Claims waiver provision because he cited it in his opposition brief. (Doc. 31, at 2). However, Plaintiff only cites the Ohio Court of Claims once in the entirety of his filings, and only in response to the argument raised by Defendants' Motions to Dismiss. *See* Doc. 30, at 7.

Under the above facts, the Court finds Defendants have not provided "convincing evidence" that Plaintiff understood the waiver provision of the Ohio Court of Claims Act. As such,

9

Defendants' request to dismiss all claims pursuant to the *Leaman* doctrine is denied without prejudice.[5]

Motion to Dismiss for Failure to State a Claim and Immunity

In the alternative, Defendants move to dismiss several of Plaintiff's claims for failure to state a claim upon which relief can be granted. First, Defendant Rose asserts Plaintiff failed to plead a plausible excessive force claim against him. (Doc. 28, at 11-13). Second, all Defendants maintain Plaintiff has not stated a plausible retaliation claim against any Defendant. (Doc. 21, at 11-12; Doc. 28, at 13-14). Finally, Defendants argue ODRC is entitled to immunity. (Doc. 21, at 12). For the following reasons, the Court agrees on all three arguments.

*Excessive Force*

Rose asserts Plaintiff failed to assert a plausible excessive force claim for which relief can be granted against him. (Doc. 28, at 11-13). Specifically, Rose argues Plaintiff failed to allege any facts which could plausibly link him to an excessive force claim. *Id.* at 13. Rose maintains the only facts about his actions specifically display he was merely gaining control of Plaintiff's left arm at the time of the incident on October 31, 2023. Plaintiff does not respond to this argument. *See* Doc. 30. For the reasons set forth below, the Court finds Rose is entitled to dismissal.

A § 1983 claim requires a plaintiff to plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 463 (6th Cir. 2006)). To satisfy the second

---

5. After discovery, Defendants may raise this argument at summary judgment if new evidence establishes Plaintiff made a knowing, voluntary, and intelligent waiver. *See Smith*, 2024 WL 5075378, at *6 n.5.

element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted).

The Eighth Amendment forbids "cruel and unusual punishment." U.S. Const. amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 320, 21 (1986). Like in Eighth Amendment claims in other contexts, an excessive force claim under the eighth amendment requires a prisoner to make sufficient showings under both objective and subjective standards. *See, e.g.*, *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). The subjective aspect of an excessive force claim pertains to a prison official's state of mind; a court inquires "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320-21). The Court considers factors such as "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley*, 475 U.S. at 321 (alteration in original) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

Courts may take account of the circumstances "as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id.* However, deference is granted to prison officials in an excessive force analysis where such officials acted to execute a policy believed to be necessary to preserve internal order, discipline, and security. *See id.* at 321-22. "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action," and *de minimis* uses of physical force that are "not of a sort repugnant to the conscience of mankind" do not violate the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (alteration in original) (quoting *Hudson*, 503 U.S. at 9-10).

Plaintiff's only specific factual allegation as to Rose is that he "got [Plaintiff's] left arm out" while officers attempted to restrain Plaintiff, who, in his own words was having a "very bad

11

reaction" to a drug he took, was "erratic," and was "[f]lailing [his] arms [and] legs [and] yelling incoherently." (Doc. 15, at 4). Plaintiff specifically identifies Defendant Hoffman as the "one who broke [his right] arm" and Defendant Yingling as causing him further pain, but does not specifically allege any other facts as to Rose. *Id.* at 4-5. Plaintiff has therefore not plausibly identified actions by Rose that are "of a sort repugnant to the conscience of mankind" so as to violate the Eighth Amendment. *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 10). Nor does Plaintiff allege any facts to suggest Rose applied any force "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320).

For these reasons the Court grants Rose's Motion to Dismiss as to the excessive force claim against him.

*Retaliation*

All Defendants maintain Plaintiff failed to allege a plausible retaliation claim because he failed to allege he was engaged in any protected conduct for which he was retaliated against and failed to "'connect the dots' between [any such] protected conduct and the adverse action." (Doc. 21, at 11-12; Doc. 28, at 13-14). They thus contend his allegations are too conclusory to state a retaliation claim. (Doc. 21, at 12; Doc. 28, at 14). In opposition, Plaintiff continues to list various instances of adverse treatment by various prison officials and characterizes such treatment as retaliatory. *See* Doc. 30, at 11-15. For the reasons set forth below, the Court finds Defendants are entitled to dismissal of Plaintiff's retaliation claims.

For a plaintiff to succeed on a claim of retaliation, he must show: "(1) he engaged in protected conduct, (2) an adverse action was taken against him that would 'deter a person of ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by [his] protected conduct.'" *Djonovic v. Septer*, 2025 WL 1005122, at

12

*2 (6th Cir.) (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2005) (en banc)). "Protected conduct" includes things such as a prisoner's "undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000). But "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim." *Hill v. Lappin*, 630 F.3d 468, 580 (6th Cir. 2005) (alteration in original) (quoting *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)).

Here, although Plaintiff alleges various actions which he claims are "retaliation," he fails to plead the first or third element of such a claim. First, Plaintiff fails to plead that he engaged in any "protected conduct." Prior to his assertions that he has been subject to "retaliation," the only facts in Plaintiff's Complaint and supplements thereto are those surrounding the alleged excessive force incident on October 31, 2023, and subsequent medical treatment. *See* Doc. 15, at 3-7. Even liberally construed, nothing about these allegations (that Plaintiff had a bad reaction to a drug, excessive force was used, inadequate treatment was provided) suggests "protected conduct" within the meaning of the First Amendment. Plaintiff's First Amendment retaliation claims fail for this reason alone. Furthermore, Plaintiff does not allege any causal connection between any protected conduct and the adverse actions of which he complains. As such, he has not plausibly alleged the first or third elements of a retaliation claim because he offers nothing more than "[c]onclusory allegations of retaliatory motive unsupported by material facts." *Hill*, 630 F.3d at 580 (quoting *Harbin–Bey*, 420 F.3d at 580).

*Eleventh Amendment / Sovereign Immunity*

ODRC argues it is entitled to sovereign immunity under the Eleventh Amendment. (Doc. In response, Plaintiff maintains he named ODRC as the employer, and his claims are primarily with the other named Defendants employed by ODRC. (Doc. 30, at ¶ 34).

Although many courts and parties use Eleventh Amendment Immunity and common-law sovereign immunity interchangeably, they are distinct concepts. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513 (6th Cir. 2021). While Eleventh Amendment immunity is rooted within subject-matter jurisdiction and contains a diversity requirement, state sovereign immunity sounds in personal jurisdiction and "refers to a state's right 'not to be amenable to the suit of an individual without its consent.'" *Id.* at 513-14 (quoting The Federalist No 81., at 496 (Alexander Hamilton) (Clinton Rossiter ed., 1961)). Here, although Defendants rely on the Eleventh Amendment, because Plaintiff is an Ohio prisoner suing an Ohio state entity sovereign immunity is the applicable doctrine.

There are three exceptions to sovereign immunity: (1) "states may consent to suit in federal court through unambiguous statutory language or conduct in litigation," (2) Congress may abrogate state sovereign immunity, and (3) the *Ex parte Young* doctrine. *Rives v. Univ. of Tenn.*, 2024 WL 5103829, at *4 (6th Cir.) (citations omitted). Defendants argue none apply here.

First, for a state to waive its immunity it must have constructed an "unequivocally expressed" waiver in the text of the relevant statute. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011). A waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* at 285 (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Ohio has not waived its sovereign immunity for 42 U.S.C. § 1983 claims in federal court. *See Wolfel v. Morris*, 972 F.2d

14

712, 718 (6th Cir. 1992); *Lee Testing & Eng'g, Inc. v. Ohio Dep't of Transp.*, 855 F. Supp. 2d 722, 726 (S.D. Ohio 2012). For these reasons, this exception does not apply.

Second, although "Congress can abrogate a State's sovereign immunity to enforce the Fourteenth Amendment[,]" "it did not do so when it enacted § 1983." *Mikel v. Quin*, 58 F.4th 252, 256 (6th Cir. 2023) (citing *Quern v. Jordan*, 440 U.S. 332, 342-43 (1979)). The second exception thus also does not apply.

Third, *Ex parte Young*, 209 U.S. 123 (1908), established a limited exception to sovereign immunity for declaratory and prospective injunctive relief compelling state officials to comply with federal law. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). However, this exception "does not permit judgments against state officers declaring that they violated federal law in the past" and "has no application in suits against the States and their agencies." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Plaintiff does not seek prospective relief, but only compensation for past harm. As such, the *Ex parte Young* exception does not apply.

For the aforementioned reasons, the Court agrees with Defendants that ODRC is entitled to dismissal on the basis of Eleventh Amendment/sovereign immunity.

In sum, the Court denies Defendants' request to dismiss this case in its entirety for lack of subject matter jurisdiction, but grants dismissal as to Plaintiff's (1) retaliation claims, (2) excessive force claim against Rose, and (3) claims against ODRC. This case will proceed on Plaintiff's excessive force claims against Hoffman and Yingling and deliberate indifference claim against Slone.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

15

ORDERED that Defendants ODRC, Hoffman, Yingling, and Slone's Motion to Dismiss (Doc. 21) be, and the same hereby is, GRANTED IN PART AND DENIED IN PART, as set forth herein; and it is

FURTHER ORDERED that Defendant Rose's Motion to Dismiss (Doc. 28), be and the same hereby is, GRANTED IN PART AND DENIED IN PART, as set forth herein.

          s/ *James R. Knepp II*
          UNITED STATES DISTRICT JUDGE

Dated: December 31, 2025